IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-01266-KLM

EMANUEL PITTMAN,

     Plaintiff,

v.

JEREMY KAHN,
JAMES GILLIS, and,
MICHELLE FOREMAN,

     Defendants.

_____

## ORDER

_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss** [#44][1] (the "Motion"). Plaintiff, who proceeds as a pro se litigant,[2] filed a Response [#46] in opposition to the Motion [#44], and Defendants filed a Reply [#47]. The Court has reviewed the briefs, the case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#44] is **GRANTED**.[3]

---

[1] "[#44]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] The Court must liberally construe the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, the Court shall not be the pro se litigant's advocate and shall not "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Pro se parties must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quoting *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)).

[3] This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent of the parties. *See* [#30, #49, #50].

## I.  Background

Plaintiff is an inmate in the custody of the Colorado Department of Corrections. *Third Am. Compl.* [#19] at 2.[4]  Although he is currently housed at the Sterling Correctional Facility, he was housed at Limon Correctional Facility ("Limon") during the events that gave rise to his claim.  *Id.* at 2-3, 10.  He has been classified as a sex offender.  *Id.* at 4.

Plaintiff alleges that, upon his arrival at Limon on August 6, 2021, he informed a non-party corrections officer about "rumors" that "people with [sex offender status] got beat up or paid rent in [Limon]."  *Id.* at 4, 12.  Allegedly present during this conversation was Defendant Jeremy Kahn ("Kahn"), a supervisory case manager at Limon.  *Id.* at 12. In addition, sometime between August 6 and "a few days" after August 25, 2021, Plaintiff's brother spoke with Defendant Kahn over the phone, presumably about Plaintiff's sex offender status.  *Id.* at 4, 13.

On or about August 24, 2021, Plaintiff informed Defendant Kahn directly—by kite and verbally—that Plaintiff's life had been threatened by numerous unnamed prisoners. *Id.* at 4.  They met in person to discuss this informal grievance, and Defendant Kahn told Plaintiff his grievance would be denied because he was not following procedure.  *Id.* Plaintiff believed, and shared with Defendant Kahn, that this discussion put Defendant Kahn and Limon on notice that Plaintiff's life was in danger and that he was now owed "some steps to prevent any harm coming to [him]."  *Id.*  Plaintiff alleges that Defendant Kahn responded by stating that "[Plaintiff and his] kind just want something to be mad about."  *Id.*

---

[4]  Allegations in the Third Amended Complaint [#19] are accepted as true and are construed in the light most favorable to Plaintiff, as the nonmovant. *Alsteens v. Piper*, No. 19-cv-01407-PAB-KLM, 2020 WL 3668781, at *2 (D. Colo. June 12, 2020), report and recommendation adopted, No. 19-cv-01407-PAB-KLM, 2020 WL 3642375 (D. Colo. July 6, 2020).

On or about August 25, 2021, Plaintiff met with Defendant James Gillis ("Gillis"), a case manager at Limon, to discuss his informal grievance. *Id.* at 3-4.  Defendant Michelle Foreman ("Foreman"), a Limon lieutenant, was also allegedly present at this meeting. *Id.* at 4, 10.  During the meeting, Plaintiff allegedly stated that "[his] life was in danger." *Id.* at 4.  Defendants Gillis and Foreman told Plaintiff "to either give them some names or return to [his] pod . . . ." *Id.*  Plaintiff chose to leave the meeting rather than provide Defendants Gillis and Foreman further information regarding the threats made against his life. *Id.*  "[A] few days" after this August 25, 2021 meeting, Plaintiff was physically "beat up" by unnamed fellow inmates. *Id.*  Plaintiff alleges he suffered a black eye and an unspecified "permanent mark" from this physical attack. *Id.* at 12-13.

Plaintiff's Third Amended Complaint [#19] asserts claims pursuant to 42 U.S.C. § 1983 against Defendants. *Id.* at 2-4, 10.  Plaintiff claims that Defendants violated his Eighth Amendment rights—specifically the Cruel and Unusual Punishment Clause—by failing to protect him from being assaulted by unnamed fellow inmates. *Id.*  He sues Defendants in both their individual and official capacities. *Id.*  He demands compensatory and punitive damages and declaratory and injunctive relief. *Id.* at 6.

Defendants present two defenses against Plaintiff's claims. *Motion* [#44] at 4, 9. Defendants argue that Plaintiff fails to allege sufficient facts in support of an Eighth Amendment claim, and that Defendants are entitled to qualified immunity. *Id.*  Defendants therefore ask the Court to dismiss Plaintiff's Third Amended Complaint [#19] with prejudice. *Id.* at 11.

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

The Court grants a motion to dismiss when a plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint survives a motion to dismiss when it contains sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The plaintiff must draft a complaint with enough factual matter to suggest that he is entitled to relief.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  A complaint cannot make "naked assertion[s]" or conclusory statements without sufficient facts to prove alleged conduct.  *See Twombly*, 550 U.S. at 557.  A plausible claim must provide more than just a mere possibility that the defendant acted unlawfully and must show a "reasonable likelihood" that facts can support the claim.  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012); *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

### III.  Analysis

#### A.    Official Capacity Claims

42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights."  *Conn v. Gabbert*,

526 U.S. 286, 290 (1999). A plaintiff must prove that each defendant caused his constitutional injury, as there is a causation element to any § 1983 claim. *See Malley v. Briggs*, 475 U.S. 335, 345 (1986) ("§ 1983 should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions."); *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) ("[A]n affirmative link [must exist] between the [constitutional] deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise.").

The Eighth Amendment protects against cruel and unusual punishment and imposes a duty on prison officials to provide reasonable protection from serious bodily harm. *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). To successfully state a claim for an Eighth Amendment violation, the plaintiff must satisfy both prongs of the two-pronged deliberate indifference test: (1) objectively, the harm the plaintiff alleges must be sufficiently serious to receive constitutional protection; and (2) subjectively, the defendant must be aware of a substantial risk of harm to the plaintiff's health or safety and disregard that risk. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

To uphold their duty, prison officials must "tak[e] reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998). As part of this obligation, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quotations omitted). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Id.* (quotations omitted). However, not every instance of inmate-on-inmate violence "translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.

### 1.    Objective Prong

Under the objective prong, a plaintiff must allege that the "harm [he] suffered rises to a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause" of the Eighth Amendment. *Martinez*, 563 F.3d at 1088 (quoting *Farmer*, 511 U.S. at 834).  To satisfy the objective prong, the "plaintiff's allegations must furnish more than a conclusory claim of being afraid."  *McConnell v. Cirbo*, No. 11-cv-02342-WJM-KLM, 2012 WL 3590762, at *10 (D. Colo. Apr. 24, 2012) (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).  The Court has found, for example, that a plaintiff alleging an assault resulting in unconsciousness, a bloodied face, and contusions[5] satisfies the objective prong in the pleadings stage.  *Straker v. Stancil*, No. 20-cv-03478-WJM-STV, 2022 WL 1193451, at *2 (D. Colo. Feb. 10, 2022).

"[A] few days" after August 25, 2021, Plaintiff was physically "beat up" by unnamed fellow inmates. *Third Am. Compl.* [#19] at 4.  Plaintiff alleges he suffered a black eye and an unspecified "permanent mark" from this physical assault.  *Id.* at 12-13.  These allegations go beyond a conclusory claim of being afraid of an attack, given that Plaintiff was actually attacked.  *See McConnell*, 2012 WL 3590762, at *10.  However, it is not clear that the alleged results of this attack—a black eye and an unspecified permanent mark—reach the level of seriousness necessary to state a cognizable claim under the Eighth Amendment.  *See Straker*, 2022 WL 1193451, at *2.  However, solely for purposes of adjudicating the present Motion [#44], the Court assumes arguendo that Plaintiff has adequately alleged the objective prong of his Eighth Amendment claim.

### 2.    Subjective Prong

---

[5] "Contusion, in its ordinarily accepted meaning, is synonymous with bruise." *Paul Revere Life Ins. Co., Worcester, Mass. v. Stanfield*, 151 F.2d 776, 777 (10th Cir. 1945) (internal quotations omitted).

Under the subjective prong, a plaintiff must allege that the defendant: (1) knew of a substantial risk of harm posed to the plaintiff; and (2) disregarded that risk "by failing to take reasonable steps to abate the risk." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).

First, a plaintiff must plausibly allege the defendant knew of a substantial risk of harm posed to the plaintiff. *Id.* A plaintiff cannot rely solely on the allegation that the defendant *should have* perceived a substantial risk. *Farmer*, 511 U.S. at 838; *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). "If the official was unaware of the risk, no matter how obvious the risk or how gross his negligence in failing to perceive it, his failure to alleviate it is not an infliction of punishment and therefore not a constitutional violation." *Szymanski*, 289 F. App'x at 318 (quoting *Tafoya*, 516 F.3d at 916) (quotations omitted).

A plaintiff must allege more than a blanket assertion that the defendant knew he faced a substantial risk of harm, *see Sayed*, 2021 WL 4099577, at *6, and a plaintiff may survive a motion to dismiss if he alleges that the substantial risk of harm to him was obvious and well-known throughout the prison and alleges examples of the defendant's knowledge of this substantial risk. *See Herbert*, 2013 WL 6077006, at *3. To satisfy this prong, a plaintiff must plausibly allege that the defendant is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [that] he . . . [drew] the inference." *Farmer*, 511 U.S. at 837.

Second, a plaintiff must plausibly allege that the defendant disregarded the substantial risk by failing to take reasonable steps to abate the risk. *Callahan*, 471 F.3d at 1159. A plaintiff must allege that the defendant deliberately acted, or failed to act, with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. But "prison officials who

actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.*

### a. Defendant Kahn

On August 6, 2021, Plaintiff alleges he had a conversation with a non-party corrections officer in front of Defendant Kahn concerning "rumors" that "people with [sex offender status] got beat up or paid rent in [Limon]." *Third Am. Compl.* [#19] at 4, 12. Here, Plaintiff merely alleges an instance where Defendant Kahn overheard a conversation about rumors. *See id.* at 12. Then, sometime between August 6 and "a few days" after August 25, 2021, Plaintiff's brother spoke with Defendant Kahn over the phone, presumably about Plaintiff's sex offender status. *Id.* at 4, 13. No details of this conversation were alleged in the Third Amended Complaint [#19], including whether Plaintiff's brother offered further information concerning the risk of harm Plaintiff faced.[6] *See id.* at 4, 13.

Finally, on August 24, 2021, Plaintiff sent Defendant Kahn a kite stating that his life had been threatened by numerous unnamed prisoners. *Id.* at 4. That same day, they met in person to discuss this informal grievance, and Defendant Kahn told Plaintiff his grievance would be denied because he was not following procedure. *Id.* Plaintiff allegedly believed, and shared with Defendant Kahn, that this discussion put Defendant Kahn and Limon on notice that Plaintiff's life was in danger and that he was now owed

---

[6] The Court notes that Plaintiff states in his Response [#46] that, during this phone call, his brother told Defendant Kahn that "[his] life had been threatened because [he] has a sex crime." *Response* [#46] at 4. The Court may not consider factual allegations made outside of the complaint when deciding a motion to dismiss. *Mobley*, 40 F.3d at 340. Regardless, this piece of information does not add anything material to information Plaintiff already alleged in the Third Amended Complaint [#19] that he himself personally conveyed to Defendant Kahn.

"some steps to prevent any harm coming to [him]." *Id.*  Plaintiff alleges that Defendant Kahn responded by stating that "[Plaintiff and his] kind just want something to be mad about."  *Id.*  Thus, Plaintiff does not allege that he provided further information to Defendant Kahn other than that his life had been threatened by numerous unnamed prisoners.  *See id.*

Plaintiff does not allege that he shared with Defendant Kahn further detail concerning the threats, including, and to the extent Plaintiff may have known, a description of the type of violence threatened against him, who made the threats, and, potentially, when and where the violence might occur.  Plaintiff merely alleges that he told Defendant Kahn the conclusory statement that his life had been threatened.  *See id.* at 4. Plaintiff does not plausibly allege that Defendant Kahn could take the information he gathered during their interactions and draw an inference "that a substantial risk of serious harm exists."  *See Farmer*, 511 U.S. at 837.  Nor does Plaintiff plausibly allege that Defendant Kahn drew the inference.  *See id.*  Plaintiff cannot rely solely on the allegation that Defendant Kahn should have perceived a substantial risk from these conversations. *See Farmer*, 511 U.S. at 838.

Plaintiff does plausibly allege that Defendant Kahn knew that someone made threats against Plaintiff's life.  But Plaintiff fails to plausibly allege that Defendant Kahn knew of a substantial risk that these threats would lead to any harm to Plaintiff.  In other words, Defendant Kahn was plausibly put on notice that *a* risk of harm existed, but not that a *substantial* risk of harm existed, as required by the subjective prong.  *See Callahan*, 471 F.3d at 1159.  Ultimately, these allegations in the Third Amended Complaint do not show a "reasonable likelihood" that Plaintiff can adequately support the claim that

Defendant Kahn knew there was a substantial risk of harm to Plaintiff.  *See Khalik*, 671 F.3d at 1190 (10th Cir. 2012).

For example, in *Sollis v. Raemisch*, No. 16-cv-00325-GPG, 2016 WL 1597848, at *3 (D. Colo. Apr. 21, 2016), *aff'd*, 668 F. App'x 846 (10th Cir. 2016), the Court found a plaintiff's alleged attempt to inform prison staff of the harm he faced to be "vague and conclusory" when he merely alleged that he received "threats and bullying by other inmates" and that he had "certain enemies," including "a specific threat group."  Like the vague allegations Plaintiff here shared with Defendant Kahn, "[c]onclusory allegations of 'threats' . . . are not enough to demonstrate a constitutional violation."  *See Sollis*, 2016 WL 1597848, at *3.

Similarly, in *Requena v. Roberts*, 893 F.3d 1195, 1214-15 (10th Cir. 2018), the Tenth Circuit Court of Appeals held that the defendants who received a plaintiff's prisoner grievance and two letters "expressing [his] concerns" were not plausibly aware of the risk of harm that ultimately occurred—a fight in the prison dining hall, allegedly in retaliation for the plaintiff angering a particular prisoner group.[7]  The plaintiff did not allege that the inmate who beat him was a member of this group or acting on behalf of such a group. *Requena*, 893 F.3d at 1215.  Thus, the Court held that the plaintiff "ha[d] not alleged and cannot allege [the defendants] were aware of the risk of harm that ultimately came about." *Id.*  Even when the Court assumed that the grievance and letters pertained to the risk of harm the plaintiff ultimately endured from the particular prison group, the Court still held

---

[7]  In the complaint, the plaintiff alleged that prison staff charged him with removing drumsticks from a Native American callout without permission. *Requena*, 893 F.3d at 1213.  He was subsequently found guilty of impermissibly having the drumsticks in his cell. *Id.*  As a result of his actions, prison officials removed the drumsticks which had been in the Native American callout for decades. *Id.*

that the plaintiff failed to state a claim against these defendants for failing to protect him from the fight in the dining hall.  *Id.* at 1214-15.  Here, even if the Court assumes that the conversation between Plaintiff and Defendant Kahn, as well as Plaintiff's brother and Defendant Kahn, pertained to the harm Plaintiff ultimately faced, Plaintiff still fails to state an Eighth Amendment claim against Defendant Kahn because he fails to allege sufficient facts to show Defendant Kahn was aware of a substantial risk of harm to Plaintiff.  *See id.*

Finally, in *Thomas v. State of Colorado*, No. 12-cv-03078-REB-CBS, 2014 WL 656838, at *5 (D. Colo. Feb. 20, 2014), the Court found that a plaintiff failed to "demonstrate that a credible threat exist[ed]" even though the defendants were "aware that [the plaintiff] [had] a hit put out on him by all the gangs in the state of Colorado." Because the plaintiff "identif[ied] no actual threats or harm" against him, the Court held his "vague allegation of possible harm fail[ed] to state a substantial risk of serious harm." *Thomas*, 2014 WL 656838, at *5.  Here, Plaintiff has also identified no specific threats or harm against him, only vague allegations of possible harm.

Accordingly, the allegations provided in the Third Amended Complaint do not plausibly allege that Defendant Kahn knew that Plaintiff faced a substantial risk of harm. *See Callahan*, 471 F.3d at 1159.  Plaintiff cannot assert that Defendant Kahn disregarded the substantial risk because he has not plausibly alleged that Defendant Kahn even knew a substantial risk existed.  *See id.*  Thus, Plaintiff fails to satisfy the subjective prong of his claim against Defendant Kahn.

Accordingly, the Motion [#44] is **granted** with respect to Plaintiff's Eighth Amendment claim against Defendant Kahn in his official capacity.[8]

### b.    Defendant Gillis and Defendant Foreman

On or about August 25, 2021, Plaintiff met with Defendant Gillis to discuss the informal grievance Plaintiff had previously sent to Defendant Kahn. *Third Am. Compl.* [#19] at 3-4. Defendant Foreman was also allegedly present at this meeting. *Id.* at 4, 10. During the meeting, Plaintiff stated that "[his] life was in danger." *Id.* at 4. Defendants Gillis and Foreman told Plaintiff "to either give them some names or return to [his] pod . . . ." *Id.* In doing so, Defendants Gillis and Foreman asked Plaintiff for details concerning the threats to help them determine whether the risk of harm was substantial. *See id.* Plaintiff chose to leave the meeting rather than provide Defendants Gillis and Foreman further information regarding the threats made against his life. *Id.* Thus, Plaintiff does not allege that he provided further details during this conversation other than that "[his] life was in danger." *See id.*

While Plaintiff does plausibly allege that Defendants Gillis and Foreman knew that Plaintiff believed his life was in danger, he fails to plausibly allege that they knew of a substantial risk that this danger would lead to any harm to him. Plaintiff does not allege that he shared with Defendants Gillis or Foreman further information concerning the danger he faced. He merely alleges he told Defendants Gillis and Foreman the vague and conclusory statement that his life was in danger. *See Sollis*, 2016 WL 1597848, at *3. Plaintiff does not allege that he identified to Defendants Gillis or Foreman any actual threat or harm against him. *See Thomas*, 2014 WL 656838, at *5. Nor does Plaintiff

---

[8] The Court discusses whether the claim should be dismissed with or without prejudice in Section III.C. below.

plausibly allege that they could take the information they gathered during their conversations and draw an inference "that a substantial risk of serious harm exists" or that they drew the inference. *See Farmer*, 511 U.S. at 837. Plaintiff cannot rely solely on the allegation that they should have perceived a substantial risk from these conversations. *See id.* at 838.

Accordingly, Plaintiff's allegations do not plausibly allege that Defendants Gillis and Foreman knew that Plaintiff faced a substantial risk of harm. *See Callahan*, 471 F.3d at 1159. Plaintiff cannot assert that they disregarded a substantial risk because he did not plausibly allege that they knew a substantial risk existed. *See id.* Thus, Plaintiff fails to plausibly satisfy the subjective prong of his claims against Defendants Gillis and Foreman.

Accordingly, the Motion [#44] is **granted** regarding Plaintiff's Eighth Amendment claims against Defendants Gillis and Foreman in their official capacities.

## B.    Individual Capacity Claims

Qualified immunity, in certain circumstances, protects government officials from litigation when they are sued in their individual capacities. *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 814-18 (1982). A government official is entitled to qualified immunity from liability for civil damages when the allegedly unlawful conduct did not violate any of the plaintiff's statutory or constitutional rights that: (1) were "clearly established" at the time of the conduct; and (2) would have been known to a reasonable person in the official's position. *Id.* at 818.

The threshold inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201

(2001).   "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.*  For example, if a plaintiff fails to satisfy the subjective prong of his Eighth Amendment claim, i.e., fails to sufficiently allege a constitutional violation, then the defendant is entitled to qualified immunity.  *See Matthews v. Wiley*, 744 F. Supp. 2d 1159, 1177 (D. Colo. 2010).

As discussed, Plaintiff does not satisfy the subjective prong in his Eighth Amendment claims against Defendants Kahn, Gillis, or Foreman.   Accordingly, Defendants are entitled to qualified immunity from liability for civil damages because Plaintiff has not plausibly alleged that Defendants violated his Eighth Amendment rights. *See Harlow*, 457 U.S. at 818.

Accordingly, the Motion [#44] is **granted** regarding Plaintiff's Eighth Amendment claims against Defendants in their individual capacities, as Defendants are entitled to qualified immunity.

## C.     Leave to Amend

In light of the order to grant the Motion [#44], the Court must determine whether the case should be dismissed with or without prejudice, i.e., whether Plaintiff should be granted leave to amend his Third Amended Complaint [#19].   While Plaintiff has not explicitly sought leave to amend, the Court notes that leave to amend a complaint can be granted by the court "freely . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The purpose of Rule 15 is to provide litigants "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties."  *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982).

Leave to amend may be denied, however, when the moving party fails "to cure deficiencies by amendments previously allowed . . . ." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  A district court may refuse to allow amendment if it would be futile.  *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013).  Even pro se litigants do not have unlimited chances to amend and must follow the same procedural rules that govern other litigants.  *Nielsen*, 17 F.3d at 1277; *see also Bertolo v. Raemisch*, No. 17-cv-00773-RM-KLM, 2020 WL 132764, at *4 (D. Colo. Jan. 13, 2020).

Prior to the filing of the Third Amended Complaint [#19], the Court had already ordered Plaintiff to "include all factual allegations and claims that he intends to assert in this action," and Plaintiff was put on notice that failure to comply with the order "may result in dismissal of some or all of this action . . . ." *Minute Order* [#7].  Also prior to the filing of the Third Amended Complaint [#19], the Court advised Plaintiff that his "conclusory allegations that the Defendants 'were put on notice' that his life was in danger, but failed to protect him, are insufficient." *Order Directing Pl. to File Am. Prisoner Compl.* [#5] at 8.  Additionally, Plaintiff advised at that same time that he "must allege specific facts to show that each named Defendant acted with deliberate indifference to a substantial risk of harm to his safety." *Id.*

### 1. Objective Prong

Although the Court assumed solely for purposes of adjudicating the present Motion [#44] that Plaintiff adequately alleged the objective prong, the Court notes that Plaintiff does not *clearly* satisfy the objective prong in his claims against Defendants, in part, because he does not detail the severity of his "permanent mark."  *See Third Am. Compl.*

[#19] at 12-13.  The Court has found no legal authority holding that a black eye, without more, would satisfy the objective prong of an Eighth Amendment Claim.   However, Plaintiff could potentially satisfy the objective prong of his claims depending on the severity of his permanent mark.  For example, a permanent mark could be a scar from a small cut incurred from a slip and fall after being pushed during the attack.  Even when combined with a single black eye, this first hypothetical set of injuries does not appear to rise to a level sufficiently serious to be cognizable under the Eighth Amendment.  *See Martinez*, 563 F.3d at 1088.  But, in a second example, a permanent mark could be a scar from a serious stab wound incurred during the attack.  When combined with a single black eye, these hypothetical injuries could potentially rise to a level sufficiently serious to be plausibly cognizable under the Eighth Amendment.  *See id.*

Thus, the Court finds that granting Plaintiff leave to amend regarding the objective prong of his claims *may* not be futile.

### 2.      Subjective Prong in Claims Against All Defendants

In his Third Amended Complaint, Plaintiff merely alleges that he told Defendant Kahn the conclusory statement that his life had been threatened, and Defendants Gillis and Foreman that his life was in danger.  *Third Am. Compl.* [#19] at 4.  Plaintiff does not allege that he shared with Defendants any details concerning the threats he received, such as, by way of example only, a description of the type of violence threatened against him, when and where the violence might occur, and who made the threats.  Plaintiff does not plausibly allege that Defendants could take Plaintiff's allegations and draw inferences "that a substantial risk of serious harm exists."  *See Farmer*, 511 U.S. at 837.

Plaintiff does include more details regarding his Eighth Amendment claims in his Third Amended Complaint when compared to his prior complaints. *See* [#1, #12]. Plaintiff now includes the dates of when he spoke with Defendants, the setting of where he spoke with them, and their responses to his conclusory allegations that threats were made against his life and that his life was in danger. *See Third Am. Compl.* [#19] at 3-4, 10.

However, Plaintiff still fails to offer further allegations to help explain how Defendants could plausibly take what Plaintiff told them and draw inferences "that a substantial risk of serious harm [to Plaintiff] exist[ed]." *See Farmer*, 511 U.S. at 837. Plaintiff has not cured these deficiencies which the Court has already identified as making his Complaint insufficient. *See Frank*, 3 F.3d at 1365. The Court has already advised Plaintiff that his "conclusory allegations that the Defendants 'were put on notice' that his life was in danger, but failed to protect him, are insufficient." *Order Directing Pl. to File Am. Prisoner Compl.* [#5] at 8. To date, Plaintiff has failed three times to sufficiently allege that Defendants knew he faced a substantial risk of harm. *See Frank*, 3 F.3d at 1365.

Correction of the deficient allegations related to Plaintiff's injuries could make a difference regarding the objective prong of the Eighth Amendment test, but would not correct the more serious omissions related to the subjective prong, which Plaintiff has been previously asked to correct three times. Accordingly, after three previous opportunities to correct these deficiencies, the Court finds that this case should be **dismissed with prejudice** because further amendment would be futile. *See Sebelius*, 709 F.3d at 1018; *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

## IV.  Conclusion

For the reasons stated above,

IT IS HEREBY **ORDERED** that the Motion [#44] is **GRANTED**.

IT IS FURTHER **ORDERED** that, pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff's

Eighth Amendment claims against Defendants are **DISMISSED with prejudice** for failure

to state a claim.

IT IS FURTHER **ORDERED** that the Clerk of Court shall **CLOSE** this case.


Dated: April 11, 2023


BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge